**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH ARUANNO, | |
| Plaintiff, | Civ. No. 07-3867 (DRD) |
| v. | **O P I N I O N** |
| MERRILL MAIN, et. al., | |
| Defendants. | |

*Appearances by:*

JOSEPH ARUANNO
STU Annex
P.O. Box CN 905
Avenel, NJ 07001-0905

      *Pro Se Plaintiff,*

ANNE MILGRAM
Attorney General of New Jersey
by:  Deputy Attorney General David L. DaCosta, Esq.
25 Market Street
P.O. Box 112
Trenton , NJ 08625

      *Attorneys for Defendants.*

**DEBEVOISE, Senior District Judge**

      This matter comes before the Court on the Motion of Merrill Main, Kevin Ryan, Cathy

Bergen, Lilly Chiappetta, and Tess Kearney, administrators and employees of the New Jersey

Department of Human Services ("DHS") (collectively, "DHS Defendants"), to dismiss the Second Amended Complaint ("SAC"), pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. Joseph Aruanno, who was involuntarily committed to the Northern Regional Unit of the Adult Diagnostic Treatment Center ("ADTC"), Special Treatment Unit ("STU"), pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), alleges that various employees of the state who administer or work at the STU interfered with his right to communicate with his attorneys. The STU is operated jointly by the New Jersey Department of Corrections ("DOC") and the New Jersey Department of Human Services ("DHS"). The defendants named in the suit are various employees of the STU, the ADTC, the DOC, and the DHS. All the DHS Defendants are being sued in their individual and official capacities, with the exception of Ryan, who is sued only in his official capacity as the Commissioner of DHS. Aruanno requests declaratory and injunctive relief, as well as compensatory and punitive damages. The pending motion presents the question of whether the DHS Defendants unconstitutionally deprived Aruanno of his right of access to the courts, and if so, whether they are entitled to qualified immunity. The Court will grant the motion and dismiss both Counts of the SAC against the DHS Defendants, with prejudice.

## I.  Background

In August 2007, Aruanno submitted the Complaint and an application to proceed in forma pauperis ("IFP"). By opinion and order dated November 20, 2007, this court granted Aruanno's IFP application but dismissed the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and/or § 1915A(b)(1), on the basis that it did not present any allegations against any defendant. By order entered December 6, 2007, this Court denied Aruanno's motion for reconsideration. Aruanno appealed this determination to the Court of Appeals for the Third

Circuit.  The Court of Appeals vacated and remanded, because the Court had not considered a document attached to the IFP application that could be construed as Aruanno's statement of claims.  Aruanno v. Main, 318 Fed. Appx. 66 (3d Cir. 2008).  On March 7, 2008, the Court vacated its earlier orders and ordered that summons be issued for all the defendants named in the Complaint.

By opinion and order dated July 11, 2008, Magistrate Judge Shipp granted Aruanno's request for pro bono counsel.  On July 25, 2008, Defendant Main filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 56.  The motion was adjourned multiple times.  On October 9, 2008, Judge Shipp appointed Aruanno pro bono counsel.  On December 4, 2008, Aruanno filed an Amended Complaint.  The pending motion to dismiss was extended to include all the named defendants.  The Court held oral arguments on the motion.  By opinion and order dated March 19, 2009, the Court dismissed the Amended Complaint in its entirety, with leave to file a second amended complaint, based on various pleading deficiencies, including that most of the allegations were asserted against all the defendants collectively, making individual determinations of the availability of their immunity defenses impossible; the allegations failed to detail the litigation about which Aruanno had been unable to speak with his counsel; and the allegations failed to allege with any specificity the conduct underlying the vague assertions of rights violations, especially with regard to the social worker defendants, Bergen, Chiappetta, and Kearney ("Social Worker Defendants").

On April 17, 2009, Aruanno filed the SAC.  On May 15, 2009, Defendants Main, Ryan, Bergen, Chiappetta, and Kearney filed the present motion to dismiss the SAC.  On July 16, 2009, Aruanno's three pro bono attorneys filed motions to withdraw as counsel.  This court granted the

motions.  Aruanno requested that the court appoint him counsel to replace the counsel that

withdrew from representing him.  The Court denied that request in a letter dated July 24, 2009.

On August 24, 2009, Aruanno filed a motion for my recusal.  The Court denied that motion by

opinion and order dated September 25, 2009.  The pending motion to dismiss was returnable

November 16, 2009, and since Aruanno is confined and no longer represented by counsel, is

being decided without oral arguments.  Aruanno filed opposition to the motion, and subsequently

filed two letters, dated November 10, 2009 and December 19, 2009, respectively.  Both listed the

Defendant's counsel as a recipient.  The November 10th letter described the conditions at the

STU Annex, where Aruanno now resides.  That letter is only peripherally relevant to the present

motion, insofar as it describes complaints Aruanno has made to Main about telephone access at

the STU Annex, which is not covered by the SAC since the SAC was submitted before the DOC

transferred Aruanno.  The second letter does not mention any of the DHS Defendants by name.

Both letters are improper submissions with respect to this motion.  The first is improper because

it was filed after opposition papers were due, the second because it was filed after the motion's

return date.  The Court will retain these letters for reference in regard to subsequent proceedings

in this action.

 The following are the allegations of the SAC, which are, for the purpose of this motion

only, accepted as true and construed in the light most favorable to Aruanno.  Phillips v. County

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  The SAC alleges two claims:  Count One,

pursuant to § 1983, for violations of Aruanno's rights under the First, Sixth, and Fourteenth

Amendments to the Federal Constitution; and Count Two, pursuant to N.J. Stat. Ann. § 10:6-2,

for violations of Article I of the New Jersey State Constitution.  The SAC names all the DHS

Defendants in both their official and individual capacities, with the exception of Ryan, whom the

SAC names in his official capacity alone.  The SAC demands declaratory and injunctive relief, as well as compensatory and punitive damages.  Specifically, the Complaint alleges harm caused by the impairment of Aruanno's ability to effectively petition the courts concerning his civil confinement and the constitutionality of the terms and conditions of his confinement.

Aruanno has been involuntarily committed to the STU pursuant to the SVPA, N.J.S.A. § 30:4-27.24-.38, since 2005.  (Id. ¶¶ 2, 19.)  Aruanno resided at the STU in Kearny, New Jersey when the events described in the SAC transpired.  (Id.)  While this motion was pending, the DOC transferred Aruanno to the STU Annex in Avenel, New Jersey.  (Dkt. 67.)

The STU is jointly administered by the DOC and the DHS.  (SAC ¶ 19.)  The DOC is responsible for providing and maintaining a secure facility for the housing of committed individuals, and the DHS is responsible for providing treatment for the same.  (Id. ¶ 19.)  Main was the Clinical Director of the STU in Kearny, New Jersey, and as such was an employee of the DHS and the State of New Jersey.  (Id. ¶ 8.)  Main is responsible for oversight of all committed residents at the STU, including Aruanno.  (Id.)  Ryan was the Commissioner of the DHS, which is jointly charged with the administration of the STU in Kearny, New Jersey.  (Id. ¶ 17.)  Bergen, Chiapetta, and Kearney were employed by the DHS as social workers for the STU in Kearny, New Jersey.  (Id. ¶¶ 13-15.)

Aruanno is a plaintiff in several individual and class action lawsuits, including:  Aruanno v. Booker, et. al., Civ. No. 08-00305 (JLL), a § 1983 action for deprivation of liberty and failure to protect and/or properly train or supervise employees, in which he appears pro se;[1] Aruanno v.

---

[1] U.S. District Judge Linares dismissed the Amended Complaint against all but one of the defendants, by opinion and order dated April 29, 2009.  The dismissal of the Amended Complaint as to those defendants is currently on appeal to the Court of Appeals for the Third Circuit.

Goodwin, et. al., Civ. No. 07-05205 (KSH), a habeas corpus action challenging his order of civil commitment, in which the Court has appointed the Federal Public Defender to aid Aruanno in the preparation and filing of an amended petition;[2] Aruanno v. Sweeney, et. al., Civ. No. 08-04449 (SDW), a § 1983 action alleging a violation of Aruanno's Fifth Amendment right not to incriminate himself and right to a prison job, in which he appeared pro se;[3] Aruanno v. State of New Jersey, et. al., Civ. No. 06-00296 (WJM), a § 1983 action alleging that he was denied due process when he was civilly committed, in which he was represented by appointed pro bono counsel;[4] and Alves, et. al. v. Ferguson, et. al., Civ. No. 01-00789 (DMC), a consolidated § 1983 class action challenging the constitutionality of the commitment of sexually violent predators, in which he appears pro se.[5]  (Id. ¶ 21.)  He also consults with not-for-profit organizations providing legal information and resources in connection with his pro se litigation.

Aruanno suffered from unduly restrictive access to pay telephones in the housing unit where he was incarcerated.  (Id. ¶ 24.)  Two of the four pay telephones in his unit were not in working order and the other two are in consistently high demand by other residents.  (Id.)  As a result, Aruanno's court-appointed attorneys cannot place incoming calls to him.  (Id.)  These pay

---

[2] This case is currently proceeding before U.S. District Judge Hayden.

[3] U.S. District Judge Wigenton dismissed the Complaint in its entirety because the allegations set forth in it were subsumed by the allegations made by Aruanno in 07-2056 (DMC), a § 1983 case for the denial of a prison job, back wages, television and other privileges, which the Court dismissed.  The Court of Appeals affirmed the dismissal.  See Aruanno v. Spagnuolo, 2008 WL 2746229 *2 (3d Cir. July 15, 2008).  Judge Wigenton's dismissal of the Complaint in Aruanno v. Sweeney, Civ. No. 08-04449 (SDW), is currently on appeal to the Court of Appeals.

[4] U.S. District Judge Martini dismissed the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  The dismissal is currently on appeal in the Court of Appeals.

[5] This case is currently proceeding before U.S. District Judge Cavanaugh.

telephones are separated by a distance of less than two feet, so Aruanno cannot have private conversations on these telephones.  (<u>Id.</u> ¶ 25.)  The STU staff has abruptly and prematurely terminated several of Aruanno's telephone calls with legal counsel.  Aruanno believes that the timing and manner of the interruptions indicate that Aruanno's telephone calls are actively monitored by STU staff.  (<u>Id.</u> ¶ 26.)

The DOC and DHS no longer allow Aruanno access to toll-free numbers because of a block placed on such calls.  (<u>Id.</u> ¶ 27.)  As a result, Aruanno cannot connect to the access numbers to use his prepaid calling cards for non-collect calls to attorney offices and the courts (which customarily will not accept collect calls) since 2006.  (<u>Id.</u> ¶ 28.)  Aruanno and his co-plaintiffs cannot simultaneously confer or exchange information with their counsel regarding the consolidated action.  (<u>Id.</u> ¶ 29.)  On August 19, 2008, Aruanno submitted a written request that the block on toll-free numbers be removed prior to August 22 so that he could dial in to a toll-free number to participate in a conference call concerning the status of the <u>Alves</u> matter.  (<u>Id.</u> ¶ 53.)  Aruanno's request was ignored by the staff for seven weeks.  (<u>Id.</u>)

For years, the STU staff has ignored Aruanno's requests for private legal telephone calls, despite the fact that STU's Residents Guide states that residents needing to make a legal call should ask a staff member for assistance.  (<u>Id.</u> ¶ 31.)  Aruanno approached the social work staff, including Bergen, Kearney and Chiapetta, to no avail.  (<u>Id.</u>)  In the rare instances when Aruanno has been permitted to make telephone calls related to legal matters, a social worker puts a telephone in a visitation room, dials Aruanno's attorneys' telephone numbers, verifies that the call is connected, and then steps out of the room.  (<u>Id.</u> ¶ 32.)  However, because of the way the room is designed, anyone in the visitation room, including DHS and DOC staff, can clearly hear the conversations between Aruanno and his counsel.  (<u>Id.</u>)

Since early 2007, Aruanno has submitted more than 30 formal administrative requests, via STU Request System and Remedy Forms, that the STU remedy his inability to communicate via telephone with legal counsel and the courts.  (Id. ¶ 33.)  Aruanno has also made regular requests for adequate access to his attorneys at monthly community meetings, which include DHS staff Main, Bergen, Kearney, and Chiapetta.  (Id. ¶ 34.)  Main, Bergen, Kearney and Chiapetta have denied Aruanno's requests with disparaging comments.  (Id. ¶ 35.)  When denying his requests, Kearney in particular told Aruanno, "so sue me" or "tell it to the courts." (Id.)

Aruanno first experienced difficulty accessing his counsel and the courts as early as the summer of 2006.  (Id. ¶ 36.)  One of Aruanno's court-appointed lawyers wrote a letter to the United States Attorney's Office regarding Aruanno's situation on October 20, 2006.  (Id.)  For several months, Aruanno's telephone access was almost entirely restricted.  Aruanno believes that the restriction was due to retaliation against him because of his attorney's letter.  (Id.)

On June 13, 2007, Aruanno submitted a written grievance concerning the inadequacy of the STU telephone system and the denial of his right to place a private telephone call to his attorneys.  (Id. ¶ 38.)  On June 16, 2007, Aruanno received a response from Paul Lagana, a DOC employee who works as the Assistant Administrator of the STU, directing him to see a social worker to set up a private call.  (Id. ¶ 39.)  However, Aruanno's assigned social worker, Chiapetta, had consistently told Aruanno that he was not entitled to such calls and had refused to comply with his requests.  (Id.)

On August 19, 2007, Aruanno submitted a formal written grievance form, attaching a letter he had written previously to Cynthia Sweeney, an administrator of the STU, regarding his lack of access to private legal telephone calls. (Id. ¶ 41.)  Although Main thereafter allegedly

reminded his social services staff to honor requests for legal calls, Aruanno's request for one private legal call per week was rejected.  (Id. ¶ 42.)  Instead, Bergen told Aruanno on October 31, 2007, that he could only make one private legal call per month.  (Id.)  Bergen told Aruanno again on November 30, 2007 and also on subsequent occasions that Aruanno's provate legal calls would be limited to one hour per month and must be scheduled to take place on the first Monday of each month.  (Id. ¶ 43.)  If Aruanno's attorneys are unavailable during that single hour on that one day, or if all discussions are not completed during that hour, Aruanno must wait until the following month to speak privately with counsel.  (Id. ¶ 44.)

On several occasions, Aruanno's telephone-usage rights were further restricted.  On or about January 16, 2008, Main scheduled a legal telephone call for Aruanno and the call was terminated after only 15 minutes by staff for a resident count, which is the process by which the DOC staff ensures that all the residents are accounted for, and which occurs at the same time every day.  (Id. ¶ 46.)  On January 19, 2008, Aruanno submitted a grievance concerning that issue.  (Id. ¶ 47.)

On March 18, 2008, Chiapetta told Aruanno that if he participated in an urgent telephone conference regarding the Goodwin matter, then he would not be allowed to make any legal telephone calls as scheduled on April 1, 2008.  (Id. ¶ 48.)  Aruanno was denied the ability to make any private legal telephone calls during the month of April.  (Id. ¶ 49.)  On April 10, 2008, Aruanno filed a grievance in response.  (Id. ¶ 50.)  On May 5, 2008, Chiapetta terminated Aruanno's call with Ian S. Marx concerning the Alves matter, before it was concluded.  (Id. ¶ 51.)  Aruanno suspects that the DOC was monitoring the call and terminated it in response to information communicated by him to Marx.  (Id.)  On May 20, 2008, Aruanno filed a grievance in response.  (Id. ¶ 52.)

On multiple occasions, the DOC personnel prematurely interrupted and ended pre-scheduled visits between Aruanno and his attorneys.[6]  (Id. ¶ 54.)  Main, Bergen, and Chiapetta have been actively involved in addressing Aruanno's repeated requests for private legal telephone calls to his attorneys.  (Id. ¶ 63.)

## II.  Discussion

The pending motion presents the question of whether the DHS Defendants unconstitutionally deprived Aruanno of his right of access to the courts, and if so, whether they are entitled to qualified immunity.  The Court will grant the DHS Defendants' motion and dismiss the claims in the SAC against them.

The DHS Defendants argue that Aruanno fails to state a constitutional claim for deprivation of access to the courts, since (1) Aruanno does not allege that he sustained an actual injury based on his inability to fully communicate with his attorneys, the courts, or legal aid organizations, (2) the limits placed on Aruanno's ability to communicate about legal matters over the telephone are reasonable in light of the institution's interest in maintaining internal order and discipline, (3) that the social workers were required by institutional policy to help residents make legal telephone calls does not give rise to a constitutional violation, and (4) pursuant to SVPA, the DOC is responsible for operating the facilities that house the sexually violent predators, while the DHS is responsible only for providing the residents with treatment, so the DHS Defendants have no control over the various conditions about which Aruanno complains. Furthermore, the DHS Defendants argue that they are all entitled to qualified immunity because

---

[6] Paragraphs 55-59 of the SAC describe various incidents during which Aruanno's attempts to meet in-person with attorneys were foiled by "defendants" or "staff," but those paragraphs do not specify in any way the involvement of any of the DHS Defendants.  Since those paragraphs are therefore not relevant to the present motion, the Court will not detail their contents.

the rights at issue were not clearly established such that a reasonable person in their position would know that their conduct was infringing on a constitutional right. Main and Ryan argue that they cannot be held liable on a theory of <u>respondeat</u> <u>superior</u>. Finally, the DHS Defendants argue that based on sovereign immunity, they cannot be held liable in their official capacities.

Aruanno argues that according to N.J.A.C. § 10A:35-2.2, every resident of the SVPC has the right to "confidential communications with the resident's attorney or the courts." (Plf Opp'n Br. at 4-5.) As for the question of vicarious liability, Aruanno argues that Main was actively involved in the deprivation of his rights, rather than only in a supervisory capacity. (<u>Id.</u> at 5.) Aruanno contends that the harm inflicted has been "not only many lawsuits and cases [being] dismissed because attorneys were forced to submit briefs, etc., without being able to contact me in time, and many postponements have been requested because of such obstructive measures…" (<u>Id.</u> at 6.) Aruanno contends that the Defendants have no immunity from the declaratory and injunctive relief that he seeks. (<u>Id.</u>)

## A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). The court's inquiry "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." <u>In re Rockefeller Ctr. Prop., Inc.</u>, 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the standard for a motion to dismiss under Rule 12(b)(6) in two cases: <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), and <u>Bell Atlantic Corp. v.</u>

Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, the Court in Bell Atlantic held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 545.  The assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (in order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 129 S. Ct. at 1949.  Although for the purposes of a motion to dismiss the court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

12

**B.      Count One:  § 1983 Claim for violations of First, Sixth and Fourteenth Amendment Rights**

As a preliminary matter, the Court notes that certain portions of the SAC refer directly to the DHS Defendants by name or as a group, while other portions refer only to "defendants" generally, "STU staff" or "staff" generally.  The resulting implication is that the DHS Defendants are named where their actions are relevant to a particular paragraph in the SAC, and are not relevant where they are not named.  Thus, the SAC's allegations against "defendants," "STU staff," or "staff," are not relevant to the pending motion to dismiss because the Court finds no indication that the DHS Defendants were involved in the events described by those allegations.

For the purpose of clarity, the Court will succinctly list the allegations according to their relevance to the DHS Defendants.  The allegations against Main, Bergen, Kearney, and Chiapetta as a group are that they were involved in monthly meetings at which Aruanno made requests for access to his attorneys; they made disparaging comments in response to his requests; and have been actively involved in addressing his repeated requests for private legal telephone calls.  (SAC ¶¶ 34-35, 63.)  The allegations against the social workers as a group, Bergen, Kearney, and Chiapetta, are that Aruanno approached the social work staff about his telephone issues to no avail, and in the rare instances that Aruanno has been allowed to make telephone calls related to legal matters, a social worker puts a telephone in a visitation room and dials it for him.  (Id. ¶¶ 31-32.)  The allegations against Main are that he reminded his social services staff to honor requests for legal calls, and he scheduled a legal call for Aruanno at the same time as a regularly scheduled resident count.  (Id. ¶¶ 42, 46.)  The allegation against Bergen is that on October 31, 2007, November 30, 2007, and other occasions, she informed Aruanno that his

private legal calls would be limited to only one per month, to be scheduled on the first Monday of each month.  (Id. ¶¶ 42-43.)  The allegations against Chiapetta are that on March 18, 2008, she told Aruanno that if he participated in an urgent telephone conference regarding the Goodwin matter, then he would not be allowed to make any legal telephone calls as scheduled on April 1, 2008, and that she terminated his call with an attorney regarding the Alves matter before it was over.  (Id. ¶¶ 48, 51.)  The allegation against Kearney is that when denying his requests, she told him, "so sue me" or "tell it to the courts."  (Id. ¶ 35.)

Ryan is only named in the SAC to state that he was the Commissioner of DHS.  Aruanno argues that Ryan, as the Commissioner of the DHS, should be liable based on his supervisory role in the organization.  However, liability under § 1983 cannot be predicated solely on the operation of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, a plaintiff must show a defendant's personal involvement, through "allegations of personal direction or actual knowledge and acquiescence."  Id.  Absent direct involvement, a plaintiff can hold a supervisor liable for failure to train or supervise if the supervisor has shown deliberate indifference to the plight of the person involved.  Carter v. City of Philadelphia, 181 F.3d  339, 357 (3d Cir. 1999).  A claim for supervisory liability involves four elements:  (1) existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of the potential for this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice.  Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).  In the SAC, Aruanno does not allege any of the required elements for supervisory liability on Ryan's part.  In fact, Aruanno does not mention Ryan at all after the SAC's paragraph 17, which names Ryan and states his position with the DHS.  Therefore, the SAC does

14

not allege sufficient facts to support a claim against Ryan, and the claims against Ryan will be dismissed.

The Court now turns to the substance of Count One.  A prima facie case under § 1983 requires the plaintiff to demonstrate:  (1) a person deprived him of a federal right; and (2) the person who deprived him of a federal right acted under color of state or territorial law.  There is no question that the DHS Defendants were acting under color of state law.  See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935 n.18 (1982) ("[S]tate employment is generally sufficient to render the defendant a state actor.").

To survive the DHS Defendants' motion to dismiss the SAC, Aruanno must allege facts that demonstrate that the DHS Defendants violated "a right protected by the Constitution and the laws of the United States."  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).  The first step "in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all."  Id.  The Complaint alleges that the DHS Defendants violated Aruanno's First, Sixth, and Fourteenth Amendment rights.

The First Amendment, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  Conditions of confinement claims arise under the due process clause of the Fourteenth Amendment for pretrial detainees or civil detainees, such as those who have been committed to a state facility.  See Youngberg v. Romeo, 457 U.S. 307, 312 (1982).  In evaluating the constitutionality of conditions or restrictions of

15

detention, the inquiry is whether the conditions amount to punishment of the detainee.  Bell v. Wolfish, 441 U.S. 520, 536 (1979).  "[T]he fact that detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into punishment." Id.  Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security."  Id. at 547.  Thus, to state a First Amendment claim, an inmate must establish allegations that indicate a constitutional violation and show that the government has no legitimate penological interest in the restrictions it imposes.  See Lewis, 518 U.S. at 361; Bell v. Wolfish, 441 U.S. at 551-52.

Inmates enjoy a First Amendment right to reasonable telephone access.  However, detainees have no right to unlimited telephone use and reasonable restrictions on telephone privileges do not violate their First Amendment rights.  See, e.g., Washington v. Reno, 35 F.3d 1093, 1099-1100 (6th Cir. 1994); Benzel v. Grammer, 869 F.2d 1105, 1108 (8th Cir. 1989) (upholding a prison regulation allowing inmates in administrative segregation and detention to make unlimited legal calls but limiting personal calls to a list of three persons, on the basis that the regulation reflected a mutual accommodation between institutional needs and inmates' rights, its limitations were a rational response to abuses of telephone rights, and affected inmates had alternative avenues for communication, including mail and visiting privileges); Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986).  Rather, a prisoner's right to telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution."  Strandberg, 791 F.2d at 747.

16

A telephone access claim involving attorneys and the courts also implicates the right to access the courts, derived in part from the First Amendment right to petition the government for grievances.  See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  Lewis v. Casey, 518 U.S. 343, 355 (1996).

A prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n. 3; Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  The actual injury requirement "derives ultimately from the doctrine of standing."  Lewis, 518 U.S. at 349.  In Lewis, which pertained to the adequacy of a prison library and legal assistance program, the Supreme Court described the actual injury element as requiring that an inmate demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a non-frivolous legal claim.  Id. at 351.  In other words, the plaintiff must allege that some access issue caused his non-frivolous legal claim to be dismissed or rejected.  See Oliver, 118 F.3d at 177.

Inmates do not have a constitutional right to any particular means of accessing the courts, such as unlimited telephone use.  Ingalls v. Florio, 968 F. Supp. 193, 203-04 (D.N.J. 1997) ("[L]imited access to telephone calls…is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits."); Aswegan v. Henry, 981 F.2d 313, 314 (8th Cir. 1992) (upholding a state penitentiary's policy of prohibiting prisoners from

17

making toll free telephone calls, even to their attorneys' 1-800 numbers because the prisoners had alternative methods of exercising the right to access the courts, and had not alleged any irreparable harm or prejudice from the policy); but see Johnson v. Galli, 596 F. Supp. 135 (D. Nev. 1984) ("There is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone…and such use is protected by the First Amendment." (finding limitation of one telephone call per week, including personal and legal calls, unreasonable and in violation of the First Amendment)).  Therefore, if an inmate has an alternative method to communicate freely and privately with counsel, it is less likely that the restrictions on telephone use will rise to the level of a constitutional violation.  See Ingalls, 968 F. Supp at 203-04; Aswegan, 981 F.2d at 314; see also Bell, 441 U.S. at 551-52 ("[T]here are alternative means of obtaining reading materials that have not been shown to be burdensome or insufficient….the available alternative means of communication…[is] a relevant factor in a case…where we are called upon to balance First Amendment rights against legitimate governmental interests.").

In sum, three questions relevant to issue of telephone access to counsel and the courts are (1) whether Aruanno has alleged facts giving rise to an inference that no legitimate penological interest was served by the DHS Defendants' actions, (2) whether he has sufficiently alleged that the DHS Defendants' actions caused him an "actual injury," and (3) whether he had alternatives avenues through which he could communicate with his attorneys and the courts.

Aruanno's claims against the DHS Defendants fail to allege sufficient facts in regards to the three questions.  At the pleading stage, it is difficult to determine whether Aruanno's level of telephone access served legitimate penological interests.  However, Aruanno has not alleged facts giving rise to an inference that no legitimate penological interests are involved in the policy, and the DHS Defendants have pointed to the need for institutional order and discipline.

18

As for the injury requirement, although the SAC lists five cases in which Aruanno is or has been a plaintiff during his confinement at the STU, the SAC does not allege that any of those cases have been dismissed due to the restricted telephone access.  Rather, the SAC conclusively states:  "as a direct and proximate result of the conduct detailed above, Plaintiff's ability to effectively petition the Courts concerning his civil commitment and the constitutionality of the terms and conditions of his confinement has been impaired, and Plaintiff has incurred damages thereby."  (SAC ¶ 75.)  In his opposition brief, Aruanno argues that:

> As to the harm not only has many lawsuits and cases been dismissed because attorneys were forced to submit briefs, etc., without being able to contact me in time, and many postponements have been requested because of such obstructive measures, which includes not even being about to attend a [post-conviction relief] hearing because the defendants refused Plaintiff appearance VIA video camera,[7] for which his application was denied, and for which such delays, etc., have also backlogged the courts thus doing harm there was well.

This argument, appearing in Aruanno's opposition brief rather than in the SAC, that "many lawsuits and cases [have] been dismissed because attorneys were forced to submit briefs, etc., without being able to contact [Aruanno] in time" is simply too vague to meet the requirement of "actual injury."  An actual injury would link an instance of telephone deprivation to the harmful consequence that deprivation caused.  The allegations do not link the alleged deprivations by the DHS Defendants to any cognizable harm suffered in any specific lawsuit, such as dismissal of the suit.  Mere inconvenience or delay in litigation does not rise to the level of a constitutional injury.  Furthermore, although the Court will not review the facts of each of Aruanno's five cases in order to determine whether each presents a non-frivolous claim, the Court notes that it has dismissed his complaints in Sweeney, Civ. No. 08-04449 (SDW) and State of New Jersey, Civ.

---

[7] The SAC does not allege that Aruanno's inability to attend the post-conviction relief hearing via video conference was caused by the DHS Defendants.  See (SAC ¶ 59.)

No. 06-00296.  Also, Aruanno is represented by appointed counsel in only two of the cases, the

Goodwin, Civ. No. 07-05205 (KSH), and State of New Jersey, Civ. No. 06-00296 (WJM), so the

cases for which a lack of telephone access with attorneys could cause harm are limited to those

two.

      As for alternative modes of communication, Aruanno does not allege that he faced any

restrictions on his ability to communicate with the courts and counsel in writing, and the SAC

does state that he faced difficulties meeting with his attorneys in person, those difficulties were

not attributed in the SAC to the actions of the DHS Defendants.  Furthermore, although the

payphones in the Aruanno's housing unit were often busy, the SAC does not allege that he was

never able to use them to make telephone calls.  Therefore, the restrictions alleged to be caused

by the DHS Defendants on his usage of the telephone to one hour per month of private legal

telephone calls did not affect Aruanno's other modes of communication, including the

payphones, the mail system, and in person visits.

      Aruanno has not alleged facts giving rise to an inference that no legitimate penological

interests are served by the DHS Defendants' actions, has not alleged an injury caused by the

DHS Defendants' alleged deprivation of his right of access to the courts, and the allegations

show that he enjoys alternative modes of communicating with attorneys and the courts,

unobstructed by the DHS Defendants.  For those reasons, the § 1983 claim against them will be

dismissed.

      Even if the Court had found that the allegations in the SAC supported an inference that

DHS Defendants were responsible for a violation of Aruanno's constitutional rights, the DHS

Defendants are entitled to qualified immunity.  The doctrine of qualified immunity protects

government officials "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is intended as a shield against the burdens of litigation as well as liability. Walter v. Pike County, Pa., 544 F.3d 182, 190 (3d Cir. 2008). In assessing whether qualified immunity is warranted, the Court must determine whether "the plaintiff has alleged a deprivation of a constitutional right," and whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009). The court may address these prongs in either order. Id. at 818. "If an official could have reasonably believed that his or her actions were lawful, the official receives qualified immunity even if in fact the actions were unlawful." Forbes v. Twp. of Lower Merion, 313 F.3d 144, 148 (3d Cir. 2002). When a challenged action presents a legal question that is "unusual or largely heretofore undiscussed, or where there is at least some significant authority that lends support to the [official] action, [the Court of Appeals has] upheld qualified immunity even while deciding that the action in question violates the Constitution." Doe v. Groody, 361 F.3d 232, 243 (3d Cir. 2004) (citations and internal quotations omitted).

Here, various authorities could have led a reasonable official in the position of the DHS Defendants to believe that his or her actions were lawful. For instance, Ingalls, 968 F. Supp. at 203-04, and Aswegan, 981 F.2d at 314, authorities from the Court and the Court of Appeals for the Eighth Circuit, respectively, support the proposition that some significant limits on telephone access are reasonable when a person who is confined has alternative modes of access to the courts, through the mail or in-person attorney visits. Additionally, Lewis, 518 U.S. at 348-55, and Oliver, 118 F.3d 175, are controlling authorities that require that the plaintiff suffer actual injury to meet the threshold of a constitutional injury. A person in the position of the DHS

Defendants could have reasonably believed that Aruanno had reasonable alternative means to access the courts and that allowing Aruanno one hour of private legal calls per month would not cause him to suffer an injury.

Aruanno argues that according to the New Jersey Administrative Code, N.J.A.C. § 10A:35-2.2, every resident of the SVPC has the right to "confidential communications with the resident's attorney or the courts." (Plf Opp'n Br. at 4-5.) Aruanno is correct that the New Jersey Administrative Code creates that right. The Code states that "[e]ach resident shall have the right…which shall not be denied under any circumstances….to confidential communications with the resident's attorney or the courts." However, violations of state law are insufficient to state a claim under § 1983. Kulwicki v. Dawson, 969 F.2d 1454, 1468 (3d Cir. 1992).

Aruanno also contends that qualified immunity does not apply to his request for injunctive relief. Aruanno is correct. Qualified immunity is available only for claims for damages and not for injunctive relief. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Acierno v. Cloutier, 40 F.3d 597, 608 (3d Cir. 1994). However, Aruanno's claim for injunctive relief against the DHS Defendants cannot survive, as the Court has already held that Aruanno has not pled a constitutional claim against the DHS Defendants.[8]

## C.    Count Two:  Claim for Violation of the Constitution of the State of New Jersey

The Supreme Court of the State of New Jersey has held that the Constitution of the State of New Jersey may provide a private cause of action premised on alleged violations of the State

---

[8] Furthermore, Aruanno was transferred to another facility, the STU Annex, after the SAC was filed. Therefore, any injunctive relief appears to be no longer applicable since Aruanno is no longer subject to the conditions at the STU, unless Aruanno files supplemental pleadings, pursuant to Fed. R. Civ. P. 15(d), describing any allegedly unconstitutional conditions occurring at the STU Annex. See Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993); Allah v. Seiverling, 229 F.3d 220, 222 (3d Cir. 2000).

constitution.  <u>Scully v. Borough of Hawthorne</u>, 58 F. Supp. 2d 435, 459 (D.N.J. 1999) (citing

<u>Peper v. Princeton Univ. Bd. of Trustees</u>, 77 N.J. 76-80 (1978)).  However, the Court has

searched the jurisprudence of New Jersey and has been unable to find a state constitutional right

guaranteeing unlimited telephone communications with one's attorney while confined or civilly

committed.  Accordingly, this claim will be dismissed as well.

### III.  Conclusion

For the foregoing reasons, the Court will dismiss the SAC against the DHS Defendants

with prejudice.  The court will enter an order implementing this opinion.


**s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: January 15, 2010