**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSEPH ARUANNO,

                Plaintiff,

v.

MERRILL MAIN, et. al.,

                Defendants.

Civ. No. 07-3867 (DRD)

**O P I N I O N**

*Appearances by:*

JOSEPH ARUANNO
STU Annex
P.O. Box CN 905
Avenel, NJ 07001-0905

      *Pro Se Plaintiff,*

ANNE MILGRAM
Attorney General of New Jersey
by:  Deputy Attorney General Daniel M. Vanella, Esq.
25 Market Street
P.O. Box 112
Trenton , NJ 08625

      *Attorneys for Defendants.*

**DEBEVOISE, Senior District Judge**

      This matter comes before the Court on the motion of Defendants, Cynthia Sweeney,

Grace Rogers, Bernard Goodwin, George Hayman, and Paul Lagana—who are all employees of

the New Jersey Department of Corrections (collectively, "DOC Defendants")—to dismiss the pro se Plaintiff, Joseph Aruanno's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  Aruanno, who was involuntarily committed to the Northern Regional Unit of the Adult Diagnostic Treatment Center ("ADTC"), Special Treatment Unit ("STU"), pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), alleges that various employees who administer or work at the STU interfered with his right to communicate with his attorneys and the courts.  The STU is operated jointly by the New Jersey Department of Corrections ("DOC") and the New Jersey Department of Human Services ("DHS").  The SAC named various employees of the DOC and the DHS as defendants, and the Court granted a motion to dismiss the claims against the DHS employees on January 15, 2010.

The SAC names the DOC Defendants only in their official capacities, with the exception of Sweeney, who is named in both her official and individual capacities.  Aruanno requests declaratory and injunctive relief, as well as compensatory and punitive damages.  This motion presents the issue of whether the SAC states a claim against the DOC Defendants.   The Court finds that the pleadings are insufficient to state a § 1983 claim for access to the courts, telephone access, or retaliation.  Accordingly, the Court will dismiss the SAC without prejudice, and with leave to file amended pleadings within 30 days if Aruanno is able to cure the deficiencies.

## I.  BACKGROUND

The procedural history of this litigation and the facts underlying Aruanno's claims are laid out in detail in the Court's January 15, 2010 Opinion.  In order to provide context for the current ruling, the Court repeats below some of the pertinent procedural history and factual information summarized in that Opinion.  See Aruanno v. Main, Civ. No. 07-3867 (DRD), 2010 U.S. Dist. LEXIS 3268 *2-5 (D.N.J. January 15, 2010).

2

**A.      Procedural History**

On April 17, 2009, Aruanno filed the Second Amended Complaint ("SAC").  On May 15, 2009, a group of DHS employees, including Merrill Main, Kevin Ryan, Cathy Bergen, Lilly Chiappetta, and Tess Kearney ("DHS Defendants"), filed a motion to dismiss the SAC.  In the Opinion dated January 15, 2010, the Court held that the pleadings failed to state a claim against the DHS Defendants and that additionally, some of the DHS Defendants were protected by the doctrine of qualified immunity and one other was only named in his supervisory capacity.

The DOC Defendants, Bernard Goodwin, George Hayman, Paul Lagana, Grace Rogers, and Cynthia Sweeney, had not answered, moved, or otherwise responded to the SAC until they filed this motion on April 30, 2010, even though the SAC was filed about a year earlier.  In April, 2010, United States Magistrate Judge Michael A. Shipp granted the DOC Defendants leave to file a dispositive motion.  Because the DOC Defendants had not answered or moved in response to the SAC, the pleadings have not yet closed and a Rule 12(b)(6) motion is the proper procedural vehicle for them to present their arguments about the sufficiency of the pleadings.  Compare Fed. R. Civ. P. 12(b)(6), with Fed. R. Civ. P. 12(c).

**B.      Allegations of the Second Amended Complaint**

The SAC presents two claims:  Count One, pursuant to § 1983, for violations of Aruanno's rights under the First, Sixth, and Fourteenth Amendments to the Federal Constitution; and Count Two, pursuant to N.J. Stat. Ann. § 10:6-2, for violations of Article I of the New Jersey State Constitution.

The following are the allegations of the SAC, which are, for the purpose of this motion only, accepted as true and construed in the light most favorable to Aruanno.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Aruanno has been involuntarily committed to the STU pursuant to the SVPA, N.J.S.A. § 30:4-27.24-.38, since 2005.  (Id. ¶¶ 2, 19.)  Aruanno resided at the STU in Kearny, New Jersey when the events described in the SAC transpired.  (Id.)  In October 2009, the DOC transferred him to the STU Annex in Avenel, New Jersey.   (Dkt. 67.)

The STU is jointly administered by the DOC and the DHS.  (SAC ¶ 19.)  The DOC is responsible for providing and maintaining a secure facility for the housing of committed individuals, while the DHS is responsible for treating them.  (Id. ¶ 19.)  Cynthia Sweeney and Grace Rogers were Administrators of the STU in Kearny, New Jersey.  Paul Lagana was an Assistant Administrator of the STU.  Bernard Goodwin was an Administrator of the ADTC. George Hayman was the Commissioner of the New Jersey DOC, which is charged with the operation of the secured STU.

Aruanno is a plaintiff in several individual and class action lawsuits, including:  Aruanno v. Booker, et. al., Civ. No. 08-00305 (JLL), a § 1983 action for deprivation of liberty and failure to protect and/or properly train or supervise employees, in which he appears pro se; Aruanno v. Goodwin, et. al., Civ. No. 07-05205 (KSH), a habeas corpus action challenging his order of civil commitment, in which the Court appointed the Federal Public Defender to aid Aruanno in the preparation and filing of an amended petition; Aruanno v. Sweeney, et. al., Civ. No. 08-04449 (SDW), a § 1983 action alleging a violation of Aruanno's Fifth Amendment right not to incriminate himself and right to a prison job, in which he appeared pro se; Aruanno v. State of New Jersey, et. al., Civ. No. 06-00296 (WJM), a § 1983 action alleging that he was denied due process when he was civilly committed, in which he was represented by appointed pro bono counsel; and Alves, et. al. v. Ferguson, et. al., Civ. No. 01-00789 (DMC), a consolidated § 1983 class action challenging the constitutionality of the commitment of sexually violent predators, in

4

which he appears <u>pro se</u>.  (<u>Id.</u> ¶ 21.)  He also consults with not-for-profit organizations providing legal information and resources in connection with his <u>pro se</u> litigation.

Aruanno suffered from unduly restrictive access to pay telephones in the housing unit where he was incarcerated.  (<u>Id.</u> ¶ 24.)  Two of the four pay telephones in his unit were not in working order and the other two were in consistently high demand by other residents.  (<u>Id.</u>)  As a result, Aruanno's court-appointed attorneys could not place incoming calls to him.  (<u>Id.</u>)  These pay telephones were separated by a distance of less than two feet, so Aruanno could not have private conversations on these telephones.  (<u>Id.</u> ¶ 25.)  The STU staff abruptly and prematurely terminated several of Aruanno's telephone calls with legal counsel.  Aruanno believes that the timing and manner of the interruptions indicate that Aruanno's telephone calls were actively monitored by DOC staff.  (<u>Id.</u> ¶ 26, 51.)

The DOC and DHS did not allow access to toll-free numbers because of a block placed on such calls.  (<u>Id.</u> ¶ 27.)  As a result, Aruanno was unable to use his prepaid calling cards for non-collect calls to attorney offices and the courts (which customarily will not accept collect calls) beginning in 2006.  (<u>Id.</u> ¶ 28.)  Aruanno and his co-plaintiffs could not simultaneously confer or exchange information with their counsel regarding the consolidated action.  (<u>Id.</u> ¶ 29.)  On August 19, 2008, Aruanno submitted a written request that the block on toll-free numbers be removed prior to August 22nd so that he could dial in to a toll-free number to participate in a conference call concerning the status of the <u>Alves</u> matter.  (<u>Id.</u> ¶ 53.)  Aruanno's request was ignored by the staff for seven weeks.  (<u>Id.</u>)

For years, the STU staff ignored Aruanno's requests for private legal telephone calls, despite the fact that STU's Residents Guide states that residents needing to make a legal call should ask a staff member for assistance.  (<u>Id.</u> ¶ 31.)  In the rare instances when Aruanno was

permitted to make telephone calls related to legal matters, a social worker put a telephone in a visitation room, dialed Aruanno's attorneys' telephone numbers, verified that the call was connected, and then stepped out of the room.  (Id. ¶ 32.)  However, because of the way the room was designed, anyone in the visitation room, including DHS and DOC staff, could hear his conversations.  (Id.)

Beginning in 2007, Aruanno submitted more than 30 formal administrative requests that the STU remedy his limited ability to communicate via telephone with legal counsel and the courts.  (Id. ¶ 33.)  At monthly community meetings, which Sweeney and various DHS staff attend, Aruanno made regular requests for adequate access to his attorneys.  (Id. ¶ 34.)

Aruanno first experienced difficulty accessing his counsel and the courts as early as the summer of 2006.  (Id. ¶ 36.)  One of Aruanno's court-appointed lawyers wrote a letter to the United States Attorney's Office regarding Aruanno's situation on October 20, 2006.  (Id.)  For several months, Aruanno's telephone access was almost entirely restricted.  Aruanno believes that the restriction was due to retaliation against him because of his attorney's letter.  (Id.)

On June 13, 2007, Aruanno submitted a written grievance concerning the inadequacy of the STU telephone system.  (Id. ¶ 38.)  On June 16, 2007, Lagana responded by directing him to see a social worker to set up a private call.  (Id. ¶ 39.)  However, Aruanno's assigned social worker, Chiapetta, consistently told Aruanno that he was not entitled to such calls and refused to comply with his requests.  (Id.)

On August 19, 2007, Aruanno submitted a formal written grievance form, attaching a letter he had written previously to Sweeney regarding his lack of access to private legal telephone calls.  (Id. ¶ 41.)  On several occasions, Aruanno's telephone-usage rights were further restricted.  On or about January 16, 2008, Main scheduled a legal telephone call for Aruanno and

the call was terminated after only 15 minutes by DOC staff for a resident count, which is the process by which the staff ensures that all the residents are accounted for, and which occurs at the same time every day.  (Id. ¶ 46.)  On January 19, 2008, Aruanno submitted a grievance concerning that issue.  (Id. ¶ 47.)

In early 2008, defendants denied Aruanno the ability to participate in a post-conviction relief hearing before Judge Garafolo in Cape May County via video conference.  (Id. ¶ 59.)  As a result, Aruanno did not participate in the hearing and was denied post-conviction relief.  (Id.)

On multiple occasions, the DOC personnel prematurely interrupted and ended scheduled visits between Aruanno and his attorneys; sometimes, lawyers visiting the STU for a scheduled meeting with Aruanno were turned away.  (Id. ¶ 54.)  Sweeney was actively involved in addressing Aruanno's repeated requests for less restrictive telephone access.  (Id. ¶ 63.)

## II.  DISCUSSION

The DOC Defendants argue that Aruanno's claims against them in their official capacities must be dismissed as barred by the Eleventh Amendment doctrine of sovereign immunity and that the request for injunctive relief is moot.  They argue that the suit against Sweeney in her personal capacity must be dismissed based on qualified immunity.  Additionally, the DOC Defendants assert that Aruanno's § 1983 claims must be dismissed because Aruanno failed to allege that he suffered any actual injury as a result of limited telephone and in-person access to the courts and his attorneys.   Finally, the DOC Defendants contend that Aruanno's pleadings do not raise an inference that any of Aruanno's rights guaranteed under the New Jersey Constitution were violated, and that in the alternative, the Court should dismiss Aruanno's state constitutional claims without prejudice by declining to exercise supplemental jurisdiction over them.

Aruanno argues that he suffered actual injury when he was unable to participate in a post-conviction relief hearing in state court.  (Id. at 4.)  He argues that communication via mail is inadequate for accessing the courts because it "only adds to delay by waiting, then replying, which adds delay to an already backlogged court system."  (Pl.'s Br. 6.)  Aruanno contends that the STU has no penal interest in restricting his visitation and telephone usage since he "has never been accused of abusing the phone privilege such as making threatening calls; fraudulent calls." (Id. at 7.)  Aruanno contends that Sweeney was directly involved in the alleged constitutional deprivation since she received Aruanno's numerous requests for better communication options, and that Rogers, Goodwin, and Hayman were also directly involved in the same manner.  (Id. at 8.)  Finally, Aruanno asserts that the DOC Defendants are all named in their individual capacities and should not be entitled to qualified immunity.  (Id.)

## A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a motion under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court's inquiry "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the standard for a motion to dismiss under Rule 12(b)(6) in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, the Court in <u>Bell Atlantic</u> held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 545.  The assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," <u>id.</u> at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  <u>Iqbal</u>, 129 S. Ct. at 1949; <u>see also</u>, <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234-35 (3d Cir. 2008) (in order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  <u>Iqbal</u>, 129 S. Ct. at 1949.  Although for the purposes of a motion to dismiss the court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>

**B.      Count One:  § 1983 Claim for Violations of Aruanno's First, Sixth, and Fourteenth Amendment Rights**

The Court will begin by addressing a preliminary matter.  Aruanno submitted papers dated May 25, 2010, in opposition to the present motion, in which he asserted legal arguments

9

that the Court will address in the present opinion.  However, Aruanno's opposition papers also asserted facts that do not appear in the SAC.

On a Rule 12(b)(6) motion to dismiss, the Court may consider only the facts alleged in the pleadings, undisputed documents alleged or referenced in the complaint, and public records of which the Court may take judicial notice.  Steinhardt Group Inc. v. Citicorp, 126 F.3d 144, 145 & n.1 (3d Cir. 1997); Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426-427 (3d Cir. 1999).  In the Court's January 15, 2010 Opinion the Court stated that Aruanno should file supplemental pleadings, pursuant to Federal Rule of Civil Procedure 15(d), if he wished to present new facts; he has not done so.  Aruanno, 2010 U.S. Dist. LEXIS 3268 at *36 n.8.  The Court will consider the portions of Aruanno's opposition papers that address legal arguments related to the facts pled in the SAC and decline to address factual assertions in his brief.

   i.   *Sovereign Immunity and Mootness*

The DOC Defendants assert that the Eleventh Amendment grants them immunity from suit for money damages in their official capacities. Based on the doctrine of sovereign immunity, states cannot be sued in federal court, unless Congress has abrogated that immunity or the State has waived it.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).  Immunity also extends to state agents when the "action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to sovereign immunity from suit even though individual officials are nominal defendants."  See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 431 (1997); Haybarger v. Lawrence County Adult Prob. & Parole, 551 F.3d 193, 198 (3d. Cir. 2008) ("[A] suit may be barred by the Eleventh Amendment even though a State is not named a party to the action…").  In Fitchik v. N.J. Transit Rail Operations, 873

10

F.2d 655, 659 (3d Cir. 1989), the Court of Appeals recited the three factors for determining whether a defendant is indeed an "arm of the state" and thus entitled to sovereign immunity:  (1) whether the money that would pay the judgment would come from the state; (2) the status of the agency under state law; and (3) the degree of autonomy the agency has.  See also Bowers v. NCAA, 475 F.3d 524, 546 (3d. Cir. 2007); Haybarger, 551 F.3d at 198.  Each of the three factors is to be given equal weight in assessing whether the DOC, and in turn, the DOC Defendants, are considered "arms of the state" for the purpose of this determination.  See id.

Since "Eleventh Amendment immunity is an affirmative defense, the burden of proving applicability is on the party asserting it."  Florence v. Bd. of Chosen Freeholders of Burlington, 595 F. Supp. 2d 492, 515 (D.N.J. 2009) (citing Carter v. City of Philadelphia, 181 F.3d 339, 347 (3d Cir. 1999)).[1]  The DOC Defendants failed to cite Fitchik or present arguments about any of the Fitchik factors.  Since the DOC Defendants have not met their burden, at this time the Court will reject, without prejudice, the DOC Defendants' argument that Aruanno's suit is subject to dismissal on the basis of the DOC Defendants' immunity from suit in their official capacities.

The DOC Defendants also assert that because Aruanno was moved from the STU to the STU Annex after the Second Amended Complaint was filed, the "alleged violations he suffered, if any, would have ceased with his move."  (Def.'s Br. 9.)  The Court does not agree with the Defendants' assertion that Aruanno's claim for injunctive relief is necessarily mooted solely by virtue of his transfer from one STU location to another.

---

[1] The DOC Defendants also bear the burden more generally of showing that no claim has been stated on a Rule 12(b)(6) motion.  See Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

The transfer may have mooted Aruanno's claim for injunctive relief based on the conditions he alleged in the SAC regarding the STU.   See Weaver v. Wilcox, 650 F.2d 22, 27-28 (3d Cir. 1981).  However, since Aruanno was simply moved to a different facility operated by the same entities, it is likely that the conditions Aruanno complains of are the same—or perhaps even more restrictive—at the STU Annex as at the STU.  As such, the DOC Defendants' assertion that Aruanno's transfer necessarily moots his claim for injunctive relief is incorrect.  It is true that Aruanno's transfer dictates that the Court cannot grant Aruanno injunctive relief if he is no longer subject to the same restrictive conditions of which he complained in the SAC.  However, without Aruanno having amended his pleadings since the transfer, the Court is unable to determine whether the same or similar conditions persist at his current location of confinement.  In other words, the mootness problem at this juncture is that the Court does not know from the pleadings before it whether Aruanno continues to suffer from the conditions alleged in the SAC.  Therefore, as the Court stated in its previous Opinion, if Aruanno still seeks injunctive relief, he must amend his pleadings—pursuant to Fed. R. Civ. P. 15(d)—so that they describe any allegedly unconstitutional conditions occurring at the STU Annex.  Aruanno, 2010 U.S. Dist. LEXIS 3268 at *36 n.8 (citing Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993); Allah v. Seiverling, 229 F.3d 220, 222 (3d Cir. 2000)).  Aruanno's claim for injunctive relief against the DOC Defendants is dismissed without prejudice and with leave to amend his pleadings.  See Weaver, 650 F.2d at 27-28.

Aruanno's request for damages, however, has certainly not been mooted by his transfer. See, e.g., Boag v. MacDougall, 454 U.S. 364 (1982) (holding that the transfer to another prison did not moot a claim for damages arising from placement in solitary confinement).

ii.     The Claim Regarding Access to Telephones, Attorney Visits, and the Courts

The DOC Defendants argue that Aruanno has not stated a claim for Count One because he has not alleged (1) actual injury resulting from his restricted telephone and visitation options; (2) facts allowing the Court to infer that no penological interest was involved in the limitations imposed on Aruanno; and (3) an inability to access the courts via other means.

The SAC alleges that the DOC Defendants violated Aruanno's First, Sixth, and Fourteenth Amendment rights.  A prima facie case under § 1983 requires a plaintiff to demonstrate:  (1) a person deprived him of a federal right; and (2) the person who deprived him of a federal right acted under color of state or territorial law.  There is no dispute that the DOC Defendants were acting under color of state law.  See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935 n.18 (1982) ("[S]tate employment is generally sufficient to render the defendant a state actor.").

To survive the DOC Defendants' motion to dismiss the SAC, Aruanno must allege facts that demonstrate that the DOC Defendants violated "a right protected by the Constitution and the laws of the United States."  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).  The first step "in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all."  Id.

As a preliminary matter, the Court notes that since Aruanno is civilly detained, his conditions of confinement claims arise under the Fourteenth Amendment.  See Youngberg v. Romeo, 457 U.S. 307, 312 (1982); see also Leamer v. Fauver, 288 f.3d 532, 544 (3d Cir. 2002).  Aruanno's § 1983 claim appears to assert two principal theories of liability against the DOC Defendants; one based on the right to access to the courts; the second based on retaliation for

13

exercising his right to access the courts.  The Court will examine each part of the § 1983 claim in turn.

The rights of access to the courts, the telephone, and to counsel are rooted in the First, Sixth, and Fourteenth Amendments.  See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008); Lewis v. Casey, 518 U.S. 343, 346 (1996).

Inmates enjoy a First Amendment right to reasonable telephone access, but not to unlimited telephone use and reasonable restrictions on telephone privileges do not violate their First Amendment rights.  See, e.g., Washington v. Reno, 35 F.3d 1093, 1099-1100 (6th Cir. 1994); Benzel v. Grammer, 869 F.2d 1105, 1108 (8th Cir. 1989) (upholding a prison regulation allowing inmates in administrative segregation and detention to make unlimited legal calls but limiting personal calls to a list of three persons, on the basis that the regulation reflected a mutual accommodation between institutional needs and inmates' rights, its limitations were a rational response to abuses of telephone rights, and affected inmates had alternative avenues for communication, including mail and visiting privileges); Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986).  A prisoner's right to telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution."  Strandberg, 791 F.2d at 747.

A telephone access claim involving attorneys and the courts also implicates the right to access the courts, derived in part from the First Amendment right to petition the government for grievances.  See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."

14

A prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by restricting his access to the courts.  See Lewis, 518 U.S. at 348-55 and n. 3; Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  The actual injury requirement "derives ultimately from the doctrine of standing." Lewis, 518 U.S. at 349. "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe, 536 F.3d at 205-206 (3d Cir. 2008) (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002)).  "To that end, prisoners must satisfy certain pleading requirements:  the complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope, and it must describe the 'lost remedy.'" Id. (quoting Christopher, 536 U.S. at 416-17).

Inmates also do not have a constitutional right to any particular means of accessing the courts, such as unlimited telephone use.  Ingalls v. Florio, 968 F. Supp. 193, 203-04 (D.N.J. 1997) ("[L]imited access to telephone calls…is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits."); Aswegan v. Henry, 981 F.2d 313, 314 (8th Cir. 1992) (upholding a state penitentiary's policy of prohibiting prisoners from making toll free telephone calls, even to their attorneys' 1-800 numbers because the prisoners had alternative methods of exercising the right to access the courts, and had not alleged any irreparable harm or prejudice from the policy).  Therefore, if an inmate has an alternative method to communicate freely and privately with counsel, it is less likely that the restrictions on telephone use will rise to the level of a constitutional violation.  See Ingalls, 968 F. Supp at 203-04; Aswegan, 981 F.2d at 314; see also Bell, 441 U.S. at 551-52 ("[T]here are alternative means

15

of obtaining reading materials that have not been shown to be burdensome or insufficient….the available alternative means of communication…[is] a relevant factor in a case…where we are called upon to balance First Amendment rights against legitimate governmental interests.").

The Court will consider each of the DOC Defendants' arguments in turn. First, the DOC Defendants attack the pleadings for failing to state that Aruanno's restricted telephone and visitation opportunities caused him an actual injury. As the Court stated in its previous Opinion, an actual injury would link an instance of telephone deprivation to the harmful consequence the deprivation caused. Aruanno, 2010 U.S. Dist. LEXIS 3268 *31. The DOC Defendants are correct that the SAC does not adequately plead that Aruanno lost the opportunity to pursue an arguable underlying claim. See Monroe, 536 F.3d at 205-206. Although the SAC lists five cases Aruanno brought in this Court, it does not allege that any of them was dismissed as a result of the telephone and visitation restrictions. Aruanno argues that having to communicate by mail rather than by phone delays his various cases. However, as the Court previously stated, mere inconvenience or delay in litigation does not rise to the level of a constitutional injury. See Aruanno, 2010 U.S. Dist. LEXIS 3268 *31.

Aruanno also argues that he suffered actual injury when he was unable to participate in a post-conviction relief hearing in state court. (Id. at 4.) Aruanno's allegation that he suffered an actual injury when he missed a post-conviction relief hearing in state court is insufficient for two reasons. First, it lacks detail in that it only states that "Defendants" caused him to miss the hearing. In a case that purports to plead claims against ten different defendants, the Court requires more information about the alleged deprivations so that it can make determinations about the individual defendants' respective liability. Additionally, as the Court of Appeals stated in Monroe, to allege an access claim, a "complaint must describe the underlying arguable claim

16

well enough to show that it is 'more than mere hope, and it must describe the 'lost remedy.'" 536 F.3d at 205-206 (quoting Christopher, 536 U.S. at 416-17). The SAC does not state any information about the state court post-conviction relief case that would allow the Court to determine whether it was a non-frivolous claim.

The DOC Defendants also assert that the access claims should be dismissed because Aruanno had other reasonable means of accessing his attorneys and the courts. Aruanno asserts that communicating by mail is not a viable alternative because it is much slower than communicating by phone or in person. The Court does not agree; as the Court previously stated, mere inconvenience or delay is not an "actual injury."

For those reasons alone, Aruanno's access to the courts and telephone access claims must be dismissed. Additionally, however, the DOC Defendants assert that Sweeney—the only DOC Defendant named in her individual capacity—is entitled to qualified immunity. Aruanno counters that the DOC Defendants are also named in their individual capacities but are not entitled to immunity. Even assuming that all of the DOC Defendants had been named in their individual capacities, the Court finds that based on the allegations in the SAC, the DOC Defendants are entitled to qualified immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is intended as a shield against the burdens of litigation as well as liability. Walter v. Pike County, Pa., 544 F.3d 182, 190 (3d Cir. 2008). It is meant to protect "all but the plainly incompetent or those who knowingly violate the law." See, e.g., Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010).

17

In assessing whether qualified immunity is warranted, the Court must determine whether "the plaintiff has alleged a deprivation of a constitutional right," and whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  Pearson v. Callahan, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009). The court may address these prongs in either order.  Id. at 818. "If an official could have reasonably believed that his or her actions were lawful, the official receives qualified immunity even if in fact the actions were unlawful." Forbes v. Twp. of Lower Merion, 313 F.3d 144, 148 (3d Cir. 2002).  When a challenged action presents a legal question that is "unusual or largely heretofore undiscussed, or where there is at least some significant authority that lends support to the [official] action, [the Court of Appeals has] upheld qualified immunity even while deciding that the action in question violates the Constitution."  Doe v. Groody, 361 F.3d 232, 243 (3d Cir. 2004) (citations and internal quotations omitted).

Here, various authorities could have led a reasonable official in the position of the DOC Defendants to believe that his or her actions were lawful.  For instance, Ingalls, 968 F. Supp. at 203-04, and Aswegan, 981 F.2d at 314, authorities from the Court and the Court of Appeals for the Eighth Circuit, respectively, support the proposition that some significant limits on telephone access are reasonable when a person who is confined has alternative modes of access to the courts, through the mail or in-person attorney visits.  Additionally, Lewis, 518 U.S. at 348-55, Oliver, 118 F.3d 175, and Monroe, 536 F.3d 198, are controlling authorities that require that a plaintiff suffer actual injury to meet the threshold for an access claim.  A person in the position of the DHS Defendants could have reasonably believed that Aruanno had reasonable alternative means to access the courts and that allowing Aruanno one hour of private legal calls per month, pay telephone access, and unlimited mail privileges would not cause him to suffer a

constitutional injury.  Therefore, the Court will grant the motion to dismiss the access portion of Count One.  When a Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, leave to amend and reassert the claims contained in that Complaint is ordinarily granted.  In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  Therefore, the Court will give Aruanno an opportunity to file amended pleadings if he is able to correct the pleading deficiencies.

    *iii.*    *The Retaliation Claim*

Additionally, Count One could state a First Amendment claim for retaliation, which in itself is a constitutional violation.  Aruanno alleges that his restricted right to telephone usage and visitation were a form of retaliation for his attempts to pursue litigation regarding the conditions and constitutionality of his confinement.  To proceed on a retaliation claim, a prisoner must allege facts sufficient to show (1) that he engaged in constitutionally protected conduct; (2) an adverse action by prison officials which is sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

The DOC Defendants do not address Aruanno's potential retaliation claim, but do move to dismiss the entirety of Count One, so the Court will determine whether the SAC states a claim for retaliation.[2]  The retaliation claim will be dismissed without prejudice because it does not conform to minimum pleading standards.

---

[2] Additionally, Aruanno is proceeding in this action in forma pauperis ("IFP").  This Court must dismiss, at the earliest practicable time, IFP actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

The SAC alleges in a blanket fashion that calls and visits were monitored by "DOC personnel" and terminated in response to information communicated during the calls as a form of retaliation for Aruanno exercising his right to challenge the conditions and fact of his confinement at the STU.  These allegations are insufficient because they fail to conform to even the minimum standard of Federal Rule of Civil Procedure 8(a) notice pleading and are too vague.

Pleadings must at the very least "give the defendant fair notice of what…the claim is and the grounds upon which it rests." Bell Atlantic, 550 U.S. at 555.  Aruanno's allegations do not give the DOC Defendants sufficient notice of the claims against them personally as required by the notice pleading standards, since the SAC only states that unnamed "DOC personnel" retaliated against Aruanno.  The Court cannot determine from the allegations before it whether the SAC states a claim against these DOC employees for retaliation.  The Court will grant Aruanno leave to file amended pleadings if he can cure this deficiency.

**B.**     **Count Two:  New Jersey Constitutional Claims**

In light of the dismissal of the federal claims in the SAC, the Court will decline to exercise supplemental jurisdiction over Aruanno's state law claims.  Count Two will be dismissed without prejudice.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant the DOC Defendants' motion to dismiss the SAC, and dismiss Counts One and Two without prejudice.  The Court is dismissing the access to the courts and telephone access portions of Count One because the SAC fails to allege that any restricted access caused Aruanno an actual injury.  Additionally, the DOC Defendants are entitled to qualified immunity from suit for that claim.  As for the retaliation portion of Count One, the Court found that Aruanno failed to properly give notice of the nature of the retaliation

claim as against these particular defendants.  As Count Two, a state law claim, will be the only remaining claim after Count One is dismissed, the Court will decline to exercise supplemental jurisdiction over it and dismiss it without prejudice.  The Court also dismissed Aruanno's claims for injunctive relief without prejudice as moot.

Aruanno will have 30 days from the date of this Opinion to amend his pleadings if the amendment will cure the aforementioned deficiencies.  The Court will enter an order implementing this opinion.


____**s/ Dickinson R. Debevoise**_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: July 7, 2010